# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

CLIFTON TERRON LEE III,

　　　　　Defendant-Appellant.

UNPUBLISHED
January 16, 2018

No. 334920
Kent Circuit Court
LC No. 15-008504-FC

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to commit murder (AWIM), MCL 750.83; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 70 years' imprisonment on his AWIM conviction and two years' imprisonment with credit for 372 days served on his felony-firearm conviction. The trial court ordered that defendant's AWIM sentence would be served consecutively to his felony-firearm sentence. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## A. BACKGROUND

This case arises out of an incident in which Sammitrice Curry survived being shot multiple times. The shooting was the culmination of an ongoing conflict between Curry and defendant. Curry testified that on August 4, 2015, he got into an argument about "some rings" with a person named "T-Lee," who Curry identified as defendant.[1] The argument occurred near Curry's father's[2] home, which is near the intersection of Franklin and Eastern in Grand Rapids. Curry confronted defendant about the rings because he believed that defendant stole them from Curry's cousin, Takeen,[3] and he wanted to get the rings back. Curry testified that when he first approached defendant, it looked like defendant was reaching for a gun. Curry "got spooked," hit

---

[1] The parties also stipulated at trial that defendant's nickname is "T-Lee."

[2] Curry's father was not identified by name.

[3] Takeen was not identified by last name.

-1-

defendant, and "put him in a headlock," but let him go when he realized that defendant did not have a gun. Then Curry told Takeen to get the rings back from defendant. Takeen and defendant looked like they were going to fight, but then Takeen and Curry just left. Officer Ryan Manser, of the Grand Rapids Police Department, observed the altercation, and he testified that when the altercation ended he heard defendant say "something similar to 'I'm going to kill that nigger.' "

On August 6, 2015, according to Curry, he was in his car on his way home at approximately 3:00 a.m. when he saw defendant's brother Cliff Pimpleton. Curry was friends with Cliff, and he was going to ask Cliff if "everything was cool" with defendant. Then Curry saw defendant walking a little behind Cliff. Curry testified that he drove around the block and parked in the driveway of his father's house. Curry got out of the car and walked down the driveway toward the street. At that point, he saw defendant come around the corner, and defendant was alone. Curry testified that he was familiar with defendant; that although it was dark outside, there were street lights and he could easily see defendant; and that he did not have any doubt that it was defendant. According to Curry, defendant had a handgun, and once he saw him, defendant started shooting. Curry testified that he went down to the ground after the first shots, and defendant kept shooting.[4] Curry put his hand to the side and "started jumping around on the ground" and moving around so defendant could not hit him. Curry testified that he was shot in the testicles, and he "screamed out" that he had been shot. Then defendant "just took off running." Curry was certain that defendant shot him and not Cliff.

Curry spoke to the police while he was in the hospital, but he did not tell the police that defendant shot him. Curry testified that he told the police that he did not know who shot him and that he described the shooter to the police as somebody who was wearing a red sweatshirt. Curry further testified that he had made up that story and was lying to the police that day about who shot him. According to Curry, he lied because he wanted to "let it go or try to get back or something," he was afraid, he did not want to go to jail, and he did not want to be labeled or targeted as a "snitch." Curry also testified that he called his parole officer, Kimberly Williams, on the day he was shot. He remembered speaking to her but did not recall telling her who shot him because he "was all drugged up and stuff" and had undergone surgery.

According to Williams, Curry called her on August 6, 2015, and told her that he was in the hospital because he had been shot seven times. She asked him who would do this to him, and Curry replied, "someone named T." Curry told her that he thought he was shot because of a previous altercation involving some jewelry that was taken from his cousin. Williams testified that Curry indicated that he had not given this information to the police and that she encouraged him to do so.

Curry did not begin cooperating with the police until August 31, 2015, when he went to the police station and told the police what happened. Curry testified that he decided to come

---

[4] Grand Rapids Police Officers Ben Johnson and Travis Bravata testified that several bullet casings were found at the scene.

forward after further encounters with defendant, including seeing defendant with a gun, which made him feel afraid.

Defendant was arrested on September 1, 2015, and he was charged in connection with the shooting with one count of AWIM and one count of felony-firearm. After his first trial ended in a mistrial on August 5, 2016, he was retried. His second trial began on August 8, 2016, and it is only this second trial that is at issue on appeal.[5]

At the second trial, defendant did not testify or present any other witnesses. However, the prosecution introduced the audio recording of defendant's testimony from his first trial. Defendant testified that he and Curry "got into a scuffle" near the intersection of Franklin and Eastern on August 4, 2015, but he did not know at the time what the scuffle was about. Curry accused him that day of stealing some rings from Curry's cousin. Defendant testified that he had only bought rings from Takeen and that the scuffle ended when defendant walked away.

Defendant further testified that he was not in the area of Franklin and Eastern during the early morning hours of August 6, 2015. He explained that "there was a lot of marijuana," and he testified, "I had to really remember, sit down and think who I was with; but I was with one of my girls." Defendant further testified that he had never carried a gun, did not own a gun, and was not involved in the shooting.

The jury found defendant guilty of AWIM and felony-firearm. This appeal followed.

## B. ANALYSIS

## I. DEFENDANT'S REMOVAL FROM THE COURTROOM DURING VOIR DIRE

First, defendant argues that his rights to due process and a fair trial were violated by his removal from the courtroom during voir dire, which also resulted in causing a distraction for the jury and the constructive denial of defendant's right to counsel during jury selection.

We review questions of constitutional law de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). However, defendant did not object to his absence from the courtroom during voir dire, so this issue is unpreserved.[6] *People v Buie*, 298 Mich App 50, 56;

---

[5] All of the testimony discussed in this opinion was introduced during defendant's second trial, and defendant's appellate issues pertain only to his second trial.

[6] Although defense counsel did not object when defendant was removed from the courtroom during voir dire, defendant argues on appeal that he preserved this issue for appeal because defendant stated, "That ain't right," in the midst of his other verbal interjections that led to his removal. It is clear that the trial court did not understand this phrase to constitute an objection because the trial court did not make a ruling addressing any such objection by defendant. Moreover, no legal ground was offered to support an objection. Based on our review of the transcript and the context in which defendant made the statement, it is clear that defendant was

-3-

825 NW2d 361 (2012). Unpreserved claims of constitutional error, including challenges based on a defendant's absence from the courtroom during a portion of trial, are reviewed for plain error affecting substantial rights. *Id*. On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; last alteration in original).

The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970).[7] The right to be present is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v Gagnon*, 470 US 522, 526; 105 S Ct 1482; 84 L Ed 2d 486 (1985). This right is also protected by the analogous provisions of the Michigan Constitution. *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984).[8] Accordingly, "[a] defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *Id*. at 247; see also *Buie*, 298 Mich App at 56. Defendants charged with a felony also have a statutory right to be present at trial. MCL 768.3 ("No person indicted for a felony shall be tried unless personally present during the trial . . . .").

However, "it is within the trial court's discretion to remove a defendant from the courtroom if the defendant's behavior is disruptive." *Buie*, 298 Mich App at 58. The United States Supreme Court has held that a defendant may lose the right to be present during trial "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 US at 343. The defendant may reclaim this right "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id*. "[T]he test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant

---

generally complaining about what was happening in the courtroom, but we do not understand his statements to constitute any type of *legal objection*.

[7] See also US Const, Ams VI and XIV.

[8] See also Const 1963, art 1, §§ 17 and 20.

was prejudiced by his absence." *Buie*, 298 Mich App at 59 (quotation marks and citation omitted; alteration in original). "[I]t is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial." *Id*. (quotation marks and citation omitted).

In this case, defendant made several verbal interjections while the prosecutor was asking questions of the potential jurors during voir dire, and the trial court instructed defendant to "please be quiet" and further stated, "I'm not going to permit you to be speaking." Defendant persisted in interrupting the proceedings, and the trial court ordered defendant to be excused from the courtroom. Although the trial court instructed defendant more than once to refrain from speaking before it ordered defendant to be removed from the courtroom, the trial court never specifically warned defendant that removal was a potential consequence of refusing to obey the trial court's instructions to be quiet. While it is impossible to discern the tone or volume of defendant's voice from the transcript, there is nothing in the record from which we can definitively conclude that defendant's interjections were accompanied by any kind of physical disruption or that they were actually abusive or threatening. Therefore, in this set of factual circumstances, the trial court's removal of defendant from the courtroom during voir dire without a prior warning may have been erroneous. *Allen*, 397 US at 343; *Buie*, 298 Mich App at 59.

Even assuming the error occurred, in the instant case it does not require reversal because defendant was not prejudiced. Defense counsel conducted voir dire in such a manner that he attempted to minimize as much as possible the damage caused in front of the jury by defendant's conduct. The juror in Seat 14, who expressed the clearest hesitation about being fair to defendant as a result of the outburst, was excused from the jury for cause. Defense counsel also questioned other jurors about any influence that the outburst had on them and secured their indications that they could set aside the outburst, treat defendant fairly, and decide the case based on the evidence. Defense counsel expressed his satisfaction with the jury that was eventually selected. The record indicates that when defendant was removed, he was taken to a holding cell where he could still hear the proceedings by electronic communication. Defendant was permitted to return to the courtroom after being absent only for voir dire and was told that he could remain in the courtroom as long as he behaved appropriately. The record reflects that defendant was present in the courtroom for the rest of trial. Because defendant only missed a limited portion of the trial and defense counsel effectively and adequately worked to secure for defendant a jury comprised of individuals who would treat him fairly, defendant has not demonstrated that he was prejudiced by his absence during voir dire. *Buie*, 298 Mich App at 59, 60.

Additionally, defendant has failed to establish prejudice in light of the significant testimonial evidence of defendant's guilt. Curry testified that he saw defendant come around the corner and shoot at him multiple times with a handgun after Curry and defendant had been in an altercation two days earlier. Curry testified that he could easily see defendant and had no doubt that defendant shot him. There was testimony that Curry was shot approximately four to eight times and that he suffered gunshot wounds to his arm, thighs, buttocks, and scrotum. Additionally, Curry's parole agent, Williams, testified that Curry called her from the hospital on the day of the shooting and told her that "T" shot him, and the parties stipulated at trial that defendant's nickname was "T-Lee." Officer Manser testified that he saw the first argument between defendant and Curry that had occurred two days before the shooting and that he heard

defendant make a comment at that time to the effect that he was going to kill Curry. Based on this evidence, a reasonable jury could conclude that defendant intended to kill Curry when he shot him multiple times with a handgun and could therefore find defendant guilty of AWIM and felony-firearm. Although Curry testified that he had initially lied to the police by not indicating that defendant shot him, and defendant testified that he was not involved in the shooting and did not own or carry a gun, credibility assessments are made by the jury. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Therefore, in light of defense counsel's efforts during voir dire to secure an impartial jury for defendant and the evidence of defendant's guilt introduced at trial, reversal is not required in this case based on the trial court's error in removing defendant from the courtroom during voir dire because there is no reasonable probability that the outcome of the trial was affected, and the evidence does not support a conclusion that defendant is actually innocent or that the error affected the fairness, integrity, or public reputation of judicial proceedings. *Carines*, 460 Mich at 763-764; *Buie*, 298 Mich App at 60.

Defendant's additional argument that the focus on defendant's outburst created a distraction for the jury is without merit. Defendant relies on *Gravely v Mills*, 87 F3d 779 (CA 6, 1996),[9] without explaining how this case supports his argument. *Gravely* is inapplicable to the instant case because *Gravely* involved prosecutorial misconduct resulting from the prosecutor's repeated, improper references to the defendant's post-*Miranda*[10] silence. *Gravely*, 87 F3d at 782, 784, 786, 788-790. In the instant case, however, any "distraction" was the result of defendant's decision to create a disturbance during his trial by interrupting the prosecutor's questioning of potential jurors during voir dire. To the extent this became a focus during voir dire, it was only the result of an attempt to ensure an impartial jury for defendant. Potential jurors were questioned to make sure that they could set aside defendant's outburst, decide the case based on the evidence, and treat defendant fairly. When prospective jurors "have been sworn to tell the truth, and testify under oath that they can be impartial, the initial presumption is that they are honoring their oath and are being truthful." *People v DeLisle*, 202 Mich App 658, 663; 509 NW2d 885 (1993).[11]

We also reject defendant's argument that he was constructively denied the right to counsel as a result of being unable to communicate with counsel while he was absent from the courtroom during voir dire. "Defendants who face incarceration are guaranteed the right to counsel at all critical stages of the criminal process by the Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment." *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005) (citation omitted). "It is well established that a *total or complete deprivation of the right to counsel* at a critical stage of a criminal proceeding is a

---

[9] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

[10] *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[11] The potential jurors in the instant case were sworn before voir dire began.

structural error requiring automatic reversal." *Willing*, 267 Mich App at 224 (emphasis added; citations omitted); see also, e.g., *United States v Cronic*, 466 US 648, 659 & n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984) (stating that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial" and that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding").

In this case, however, defendant was *not deprived* of counsel. Although defendant was removed from the courtroom during a portion of voir dire, defense counsel was not absent during that time. Defendant has not provided any legal authority to support his argument that he was totally deprived of counsel as a result of his inability to communicate with counsel while he was absent from the courtroom, and defendant's argument is without merit nonetheless. The United States Supreme Court has held that a trial court's "order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment," reasoning that an overnight recess was a time "when an accused would normally confer with counsel." *Geders v United States*, 425 US 80, 82, 91; 96 S Ct 1330; 47 L Ed 2d 592 (1976). However, in the instant case, the trial court did not order defendant and defense counsel not to communicate, and there is no indication in the record that the trial court denied any request by defendant to communicate with his counsel or that defendant ever made such a request.

Furthermore, defense counsel could, and did, adequately represent defendant during voir dire without defendant's input. This Court has stated that "an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (citations omitted). The United States Supreme Court has also recognized that "the lawyer has—and must have—full authority to manage the conduct of the trial" and that "[t]he adversary process could not function effectively if every tactical decision required client approval." *Taylor v Illinois*, 484 US 400, 418; 108 S Ct 646; 98 L Ed 2d 798 (1988);[12] see also *People v Carter*, 462 Mich 206, 218-219; 612 NW2d 144 (2000) (noting that "counsel has full authority to manage the conduct of the trial and to decide matters of trial strategy"). In the

---

[12] As the United States Supreme Court also acknowledged, there are certain "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client," such as the constitutional right to plead not guilty and have a trial and the right to be present during trial. *Taylor*, 484 US at 417-418, 418 n 24. However, in this case, defense counsel did not purport to waive any of defendant's rights. Defendant had a trial, and he was only removed from the courtroom during a portion of voir dire based on his own disruptive behavior, after which he returned to the courtroom and was present for the remainder of his trial. Defense counsel remained in the courtroom as defendant's advocate while defendant was absent, and defense counsel was not *prevented* from representing defendant's interests or making tactical decisions regarding jury selection. *Cronic*, 466 US at 659 & n 25; *Taylor*, 484 US at 418; *Johnson*, 245 Mich App at 259.

instant case, the trial court did not give any order that prevented defense counsel from carrying out his duties to represent defendant, and defendant is not entitled to relief on this ground because he was not totally deprived of the right to counsel at a critical stage of his criminal proceedings and thus was not denied due process. *Cronic*, 466 US at 659 & n 25; *Willing*, 267 Mich App at 219, 224.

## II. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor improperly elicited testimony that defendant was part of a Grand Rapids gang, that the prosecutor elicited this evidence to improperly show that defendant should be convicted in the instant case because of his gang affiliation, that the testimony was irrelevant and prejudicial to the jury, and that this denied defendant his right to due process and a fair trial. Defendant essentially raises a claim of prosecutorial misconduct.[13]

Defendant did not preserve this argument because he did not object to the prosecutor's conduct that is now challenged on appeal. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). In other words, our review of this unpreserved issue is for plain error affecting substantial rights. *Id*. This Court has stated that there is no error requiring reversal for unpreserved claims of prosecutorial misconduct "where a curative instruction could have alleviated any prejudicial effect." *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003). We also note that defendant's claim presents a nonconstitutional issue because his prosecutorial misconduct claim merely asserts a violation of his general due-process right to a fair trial and does not claim that a "specific, enumerated constitutional right" was violated. *People v Blackmon*, 280 Mich App 253, 260-262; 761 NW2d 172 (2008). "Merely framing an issue as constitutional does not make it so." *Id*. at 261.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor may not intentionally inject inflammatory arguments with no apparent justification except to arouse prejudice." *People v Lee*, 212 Mich App 228, 247; 537 NW2d 233 (1995). "Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (quotation marks and citation omitted). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and "[t]hey are generally free to argue the evidence and all reasonable inferences from the

---

[13] We note that defendant has not constructed any legal argument asserting that the testimony about defendant's alleged gang affiliation was inadmissible, and defendant has not cited any of the Michigan Rules of Evidence as part of his appellate argument on this issue. Therefore, any potential argument relating to the admissibility of these particular statements is abandoned. An issue is abandoned if an appellant "fail[s] to properly address the merits of his assertion of error." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

In this case, Curry's credibility with respect to his delayed identification of defendant as the shooter was a central issue of the trial, and it was made an issue from the beginning of trial. During opening statements, defense counsel presented the jury with the defense theory that Curry was falsely accusing defendant of being the shooter because Curry and defendant had previously had a disagreement over some rings. Curry testified that two days before the shooting occurred, he had confronted defendant because he thought defendant had stolen "some rings" from his cousin. The argument involved a brief physical altercation, after which, the parties went their separate ways. Additionally, Curry testified that after the shooting, he initially lied to the police by telling them that he did not know who shot him but later told the police that defendant shot him. Curry indicated that he initially refrained from cooperating with the police out of fear. However, the defense theory was that Curry initially told the truth when he indicated that he could not identify the shooter and that Curry lied when he subsequently implicated defendant.

"A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*. In this case, defendant's prosecutorial misconduct argument focuses on the prosecutor's elicitation of testimony referring to defendant's alleged gang affiliation, and when an "issue is as much an evidentiary issue as it is a prosecutorial misconduct matter," this Court "focus[es] on whether the prosecutor elicited the testimony in good faith." *Id*. at 70-71. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. at 70.

Thus, to analyze defendant's appellate claim, certain evidentiary principles are pertinent. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, [the Michigan Rules of Evidence], or other rules adopted by the Supreme Court," and "[e]vidence which is not relevant is not admissible." MRE 402. However, "[e]vidence need not be directed at an element of the offense or a defense to be material." *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005). "[E]vidence is relevant when it affects the credibility of the victim and when it affects the credibility of witnesses who enhance the victim's credibility." *People v King*, 297 Mich App 465, 476-477; 824 NW2d 258 (2012). "[T]he jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on the accuracy and truth of a witness' testimony." *People v Layher*, 464 Mich 756, 765; 631 NW2d 281 (2001) (quotation marks and citation omitted); see also *King*, 297 Mich App at 477.

In this case, the prosecutor asked Curry, "who are [defendant's] friends that make you afraid" and Curry responded, "I guess he affiliated with the Beemis guys or whatever." The question was asked within the context of an extended series of questions about why Curry initially lied to the police and why he subsequently changed his mind and decided to tell police

-9-

that defendant was the shooter. Curry had already testified that he initially lied to the police because he was afraid of being targeted on the streets as a "snitch" and was afraid of defendant's friends. During the prosecutor's cross-examination of defendant, he admitted that he was associated with this gang but denied being "from the gang."

In light of the defense theory at trial, evidence of defendant's gang affiliation and Curry's fear of defendant's friends who were in the gang was relevant to explaining why Curry delayed in identifying defendant as the shooter; this explanation made it more probable that Curry's identification of defendant was truthful. MRE 401; *Yost*, 278 Mich App at 356. It was important for the jury to hear evidence explaining this delay in order to assess the accuracy and truth of Curry's testimony, especially since Curry was the only witness to identify defendant as the shooter. *Layher*, 464 Mich at 765; *Yost*, 278 Mich App at 356. Defendant never objected to the admissibility of the brief references to the name of the gang. Therefore, based on the relevance of this evidence, the prosecutor's questioning was merely a reflection of a good-faith effort to present admissible evidence, which is not misconduct. See *Dobek*, 274 Mich App at 70 (concluding that a prosecutor's challenged conduct was not an effort to admit evidence in bad-faith where the evidence at issue was "arguably admissible"). Therefore, defendant has not established error requiring reversal based on his unpreserved claim of prosecutorial misconduct. *Ackerman*, 257 Mich App at 448-449.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he received ineffective assistance of counsel based on (1) defense counsel's failure to object to defendant's removal during voir dire and (2) defense counsel's failure to object to the references involving defendant's alleged gang affiliation.

Defendant did not move the trial court for a new trial or for an evidentiary hearing, but defendant moved this Court to remand to the trial court for the purpose of conducting an evidentiary hearing related to these ineffective assistance of counsel claims. We denied defendant's motion.[14] Therefore, no testimonial record was made in the trial court, and defendant's ineffective assistance of counsel claims will be treated as though unpreserved. *People v Musser*, 259 Mich App 215, 220; 673 NW2d 800 (2003). "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *Unger*, 278 Mich App at 242. Factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

A defendant raising a claim of ineffective assistance of counsel "bears the burden of proving that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have

---

[14] *People v Lee*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 334920).

been different." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017) (quotation marks and citation omitted); see also *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 US at 700.

Here, defense counsel's decision not to object when defendant was removed from the courtroom did not constitute deficient performance. As previously noted, jury selection involves matters of trial strategy. *Johnson*, 245 Mich App at 259. "[D]eclining to raise objections . . . can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242. Defense counsel in the instant case could have reasonably concluded that it was better to refrain from objecting to defendant's removal in order to avoid calling further attention to defendant's outburst or to prevent further outbursts by allowing defendant to calm down. Defense counsel also could have reasonably determined that any potentially damaging effect would be minimized by allowing the matter to proceed without prolonging the potential jurors' exposure to defendant's disruptive behavior. When evaluating an ineffective assistance of counsel claim, "a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). Therefore, defense counsel's performance was not below an objective standard of reasonableness. *Foster*, 319 Mich App at 391.

Furthermore, for the same reasons that defendant was not prejudiced by his removal from the courtroom, defendant has also failed to demonstrate that but for the lack of objection by defense counsel, the outcome of the proceedings would have been different. *Id*. Therefore, defendant has failed to demonstrate that he received ineffective assistance of counsel based on this ground. *Strickland*, 466 US at 700.

With respect to defendant's next ineffective assistance of counsel claim regarding the references to his alleged gang affiliation, an objection likely would have been unsuccessful in preventing the testimony from coming in at trial because, as previously discussed, the testimony was admissible and the prosecutor's arguments were not improper in light of the defense theory presented at trial. "[F]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Pinkney*, 316 Mich App 450, 473; 891 NW2d 891 (2016) (quotation marks and citation omitted). Moreover, although defense counsel could have potentially obtained an appropriate limiting instruction had defense counsel objected to the testimony or closing argument, defense counsel may have determined that it was a better strategy to let the isolated references pass without objecting. Curry testified in detail about how he had run into defendant on more than one occasion after the shooting and was afraid of defendant because he had seen defendant with a gun. The Bemis Boys references were brief and without elaboration. Had defense counsel objected, he may have called greater attention to the alleged gang affiliation, potentially giving this minor, isolated fact more significance in the eyes

of the jury. Therefore, defense counsel may have had a sound strategic reason for declining to object. *Gioglio*, 296 Mich App at 22-23. "[T]here are times when it is better not to object and draw attention to an improper comment," and "declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242 (quotation marks and citation omitted). On this record we cannot conclude that defense counsel performed below an objective standard of reasonableness, *Foster*, 319 Mich App at 391.

Furthermore, defendant cannot establish that the outcome of the trial would have been different but for defense counsel's failure to object to these references because there was significant evidence of defendant's guilt; this evidence included additional testimony about Curry's hesitancy to come forward initially as a result of his fear of defendant, as well as Curry's unequivocal testimony that defendant shot him. *Id*. Therefore, defendant has also failed to demonstrate that he received ineffective assistance of counsel based on this ground. *Strickland*, 466 US at 700.

## IV. HEARSAY

Next, defendant argues that his due process right to a fair trial was violated because the trial court erred by admitting, pursuant to MRE 801(d)(1)(B) and (C), the testimony of Curry's parole officer, Williams, indicating that Curry called her from the hospital and told her that "T" shot him.

Defendant's evidentiary challenge is preserved because he objected at trial on hearsay grounds to the admissibility of Williams's testimony regarding Curry's prior statement, and the trial court ruled that the testimony was admissible under MRE 801(d)(1)(B) and (C). *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). However, defendant never raised a due-process argument in the trial court, and this issue is therefore unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007); *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Furthermore, defendant has asserted a general due process claim that is based on an alleged error in the admission of evidence without claiming that a specific constitutional right was violated. Therefore, defendant has merely asserted a claim of nonconstitutional evidentiary error. *Blackmon*, 280 Mich App at 260-261.

This Court "review[s] for abuse of discretion a trial court's decision to admit or exclude evidence." *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376, 399 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217; 749 NW2d 272 (2008). De novo review applies to a "trial court's rulings on preliminary questions of law regarding the admissibility of evidence, such as the application of a statute or rule of evidence." *King*, 297 Mich App at 472. "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*.

MRE 802 provides, "Hearsay is not admissible except as provided by these rules." " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). MRE

801(d)(1) defines types of statements that are *not* hearsay and provides in pertinent part regarding a witness's prior statement that

> [a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person.

The first ground relied on by the trial court for admitting Curry's statement through Williams's testimony was MRE 801(d)(1)(B). "The admission of a prior consistent statement through a third party is appropriate if the requirements of MRE 801(d)(1)(B) are satisfied." *People v Jones*, 240 Mich App 704, 706; 613 NW2d 411 (2000).

> [T]he party offering the prior consistent statement must establish four elements:
>
> > (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*Id*. at 707 (quotation marks and citation omitted).]

"[T]he motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *Id*. at 711.

In this case, the first element is clearly met: Curry testified at trial and was cross-examined by defense counsel. See *id*. at 707. The third element is also clearly met: Williams's trial testimony that Curry told her he was shot by "T" but would not go to the police out of fear was consistent with Curry's testimony identifying defendant as the shooter, indicating that defendant's nickname was "T-Lee," and indicating that he delayed reporting defendant's identity to the police because he was afraid. See *id*. The second element was also met as well because, as previously discussed, the defense theory was clearly based on an allegation that Curry had recently fabricated his testimony identifying defendant as the shooter after first telling police that he could not identify the shooter. See *id*.

However, the crux of the matter in this case is the relationship between the second and fourth elements. Defendant argues on appeal that the challenged testimony was inadmissible as a prior consistent statement because Curry had the same motive to lie when he made the prior statement as he did when he testified. Defendant does not identify this motive in his appellate brief, but it is clear from defense counsel's opening statement and closing argument that the defense presented a theory that (1) Curry falsely implicated defendant in the shooting because Curry was angry with defendant over the rings and that (2) Curry was initially telling the truth

when he told police that he did not know who shot him. Therefore, it is this motive—that Curry wanted to falsely identify defendant as the shooter in retaliation for the ring incident—that must be consistent between elements two and four. See *id*. at 711.

When Curry made the statement to Williams, it does not appear that Curry had a desire to "falsely" identify defendant as the shooter based on the alleged motive of wanting to see him prosecuted for the shooting as payback for the ring incident. If Curry actually held such a motive on August 6, 2015, then he also would have told the police who were investigating the shooting that defendant was the shooter when the police spoke to Curry on the day of the shooting. But Curry did not do so, and he did not go to the police with this information until August 31, 2015, despite Williams's encouragement to report the identity of the shooter to the police. For purposes of admissibility under MRE 801(d)(1)(B), the mere fact that defendant chose an event that predated the prior statement to Williams as one that *could plausibly provide an alleged reason* for Curry to want to falsely accuse defendant does not automatically confer on Curry a motive for lying at the time the prior statement was made and make the prior statement inadmissible hearsay. It is also significant that Curry's prior statement was not made to the police even though the essential thrust of defendant's argument is that Curry was falsely implicating defendant in a crime as a means of revenge. Curry's actions were inconsistent with having actually possessed the motive ascribed to him by defendant. See *People v Fisher*, 220 Mich App 133, 154-155; 559 NW2d 318 (1996) (holding that a third-party witness's testimony about statements made by the declarant were admissible under MRE 801(d)(1)(B) where one of the defense theories at trial was that the declarant had "fabricated his claim in order to 'sell something to the prosecutor' and that he had an improper motive," reasoning that because the declarant's statements were "made to a friend and preceded [the declarant's] contact with the prosecutor, they arguably preceded his motive to fabricate"), overruled on other grounds by *People v Houthoofd*, 487 Mich 568, 583; 790 NW2d 315 (2010).

Therefore, Curry's statement to Williams was made before "the supposed motive to falsify" ever existed, all four elements were satisfied, and the trial court did not abuse its discretion by admitting the challenged statements under MRE 801(d)(1)(B). *Jones*, 240 Mich App at 707; *Fisher*, 220 Mich App at 154-155.

Furthermore, the trial court also did not err by relying on MRE 801(d)(1)(C) to admit Williams's testimony about Curry's prior statements. "[U]nder MRE 801(d)(1)(C), statements of identification are not hearsay when the identifier is subject to cross-examination." *People v Malone*, 445 Mich 369, 371; 518 NW2d 418 (1994). "MRE 801(d)(1)(C) permits the jury to assess the substantive worth of a prior statement of identification where the identifying witness fails, refuses, or reaffirms a prior statement of identification at trial." *Id*. at 386. More specifically, "third-party testimony of an out-of-court statement of identification by an identifier/declarant is substantive nonhearsay evidence and is admissible even if it goes beyond the simple facts and circumstances of the prior out-of-court statement of identification-if the identifier/declarant testifies and is subject to cross-examination." *People v Sykes*, 229 Mich App 254, 266-267; 582 NW2d 197 (1998).

In this case, Curry testified at trial that defendant shot him and that he had no doubt that defendant was the shooter. Defense counsel cross-examined Curry about his identification of defendant. Specifically, defense counsel asked Curry about his initial statement to the police, in

which Curry indicated that he did not get a good look at the shooter and could not identify anybody, and defense counsel questioned Curry about how dark it was and the available lighting when the shooting occurred. Williams testified that Curry called her from the hospital on the day of the shooting and told her that "T" shot him. Curry had testified that defendant's nickname was T-Lee, and the parties also stipulated to this fact at trial. Williams further testified that Curry told her that he knew the shooter and had previously confronted him over some jewelry that had been taken from his cousin. Therefore, Williams's testimony about defendant's out-of-court statement of identification was admissible as nonhearsay, and the trial court did not abuse its discretion in admitting this evidence. MRE 801(d)(1)(C); *Sykes*, 229 Mich App at 266-267.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant also raises additional issues in his Standard 4 brief.

First, defendant appears to raise a claim of prosecutorial misconduct by arguing that the prosecutor improperly used facts specific to the case to form questions for the potential jurors during the portion of voir dire directly preceding his removal from the courtroom. Defendant's claims of error related to prosecutorial misconduct during voir dire and jury selection are unpreserved because defendant never made an objection related to jury selection or the prosecutor's voir dire questions that he now challenges on appeal,[15] and defense counsel expressed satisfaction with the jury that was empaneled. *Bennett*, 290 Mich App at 475; *Metamora Water Serv, Inc*, 276 Mich App at 382; *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992).

"The scope of voir dire examination of jurors is within the discretion of the trial judge and his decision will not be set aside absent an abuse of that discretion." *People v Harrell*, 398 Mich 384, 388; 247 NW2d 829 (1976). However, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. This Court also reviews claims of prosecutorial misconduct for plain error affecting substantial rights if a defendant fails to make a contemporaneous objection or request for a curative instruction regarding an alleged error. *Callon*, 256 Mich App at 329. Where a defendant raises a prosecutorial misconduct issue and asserts a "violation of the general due-process right to a fair trial," without claiming that a "specific, enumerated constitutional right" was violated, as is the case here, the issue is nonconstitutional. *Blackmon*, 280 Mich App at 260-262. There is no error requiring reversal for unpreserved claims of prosecutorial misconduct "where a curative instruction could have alleviated any prejudicial effect." *Ackerman*, 257 Mich App at 448-449.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial," *Dobek*, 274 Mich App at 63, and we evaluate the prosecutor's remarks in

---

[15] Defendant argues that his verbal outbursts that preceded his removal from the courtroom should be construed as a sufficient objection to preserve these arguments for appeal. However, as we previously stated, our review of the transcript leads us to conclude that defendant's statements could not be understood to constitute a formal "objection," much less an objection on any specific legal ground.

context, *Akins*, 259 Mich App at 562. "A defendant who chooses a jury trial has an absolute right to a fair and impartial jury," and "[t]he purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (opinion by MALLETT, J.). "The trial court has discretion in both the scope and the conduct of voir dire." *Id*. at 619. Specifically, MCR 6.412(C)(1) provides that

> [t]he scope of voir dire examination of prospective jurors is within the discretion of the court. *It should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges*. The court should confine the examination to these purposes and prevent abuse of the examination process. [Emphasis added.]

The Michigan Supreme Court has "long recognized the importance of a voir dire that allows the court and the parties to *discover hidden bias that would render a potential juror incompetent*. *Tyburski*, 445 Mich at 619 (emphasis added). "[A] trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges." *Taylor*, 195 Mich App at 59.

In this case, before defendant began interjecting comments and was removed from the courtroom, the prosecutor was asking questions related the potential jurors' attitudes toward (1) listening to police testimony fairly; (2) listening fairly to the victim's testimony even though HE was involved with drugs, had told conflicting stories to the police, had lied, and had been labeled a snitch; and (3) physical evidence such as DNA and fingerprint evidence. In doing so, the prosecutor explained that it was typical to not have DNA or fingerprint evidence in a shooting like the instant case and that there was no such evidence in this case. The prosecutor also explained that the victim was the only person who would indicate that defendant was at the scene of the shooting. It is evident from examining the prosecutor's questions in context that the questions were directed at discovering whether any potential jurors held biases related to these issues that were central to a fair determination of the case in order to discover grounds for cause and intelligently exercise peremptory challenges. MCR 6.412(C)(1); *Tyburski*, 445 Mich at 619; *Taylor*, 195 Mich App at 59. The questioning was not inflammatory and was directly related and narrowly tailored to the pertinent issues of the case; such questioning is appropriate and proper. See *People v Dunham*, 220 Mich App 268, 270; 559 NW2d 360 (1996).

Moreover, at the beginning of voir dire, the trial court instructed the potential jurors that they would be asked questions probing their attitudes and beliefs in order to select an impartial jury. The jury that was selected was also instructed before the trial began that the jury was to decide the case based only on the admitted evidence, and the trial court further instructed the jury about the definition of evidence. Even if the prosecutor's questioning had been inappropriate, any prejudicial effect was cured by the trial court's instructions. *Unger*, 278 Mich App at 235.

Therefore, defendant has failed to show plain error based on the prosecutor's conduct during voir dir. *Carines*, 460 Mich at 763.

Next, defendant argues, that his conviction should be reversed because he did not receive a circuit court arraignment, he did not waive this arraignment, and the trial court never obtained

jurisdiction to conduct his trial. Defendant did not raise these arguments below, and they are therefore unpreserved. *People v Henry (After Remand)*, 305 Mich App 127, 158; 854 NW2d 114 (2014). Unpreserved challenges based on an alleged defect in the arraignment procedures are reviewed for plain error affecting substantial rights. *Id*.

"The purpose of an arraignment is to provide formal notice of the charge against the accused." *Henry*, 305 Mich App at 158. Although our Supreme Court has held that a conviction and sentence must be set aside where there was no indication in the record that the defendant was arraigned on the information and there was also no indication that a plea was ever made by the defendant or entered by the trial court, *Grigg v People*, 31 Mich 471, 471-473 (1875), the Michigan Supreme Court subsequently held that "the presence of defendant in court through a trial of the cause upon the merits represented by counsel, who failed to call attention to the omission of arraignment and plea, was a waiver of his right thereto." *People v Weeks*, 165 Mich 362, 364; 130 NW 697 (1911). In *Weeks*, the Court noted that such a situation "differs materially from the record in *Griggs v People* [sic]." *Id*. The *Weeks* Court further indicated a failure to arraign is a defect that is "merely technical, affecting no substantial right whatever" and that "[w]here the prisoner appears with his own counsel, the omission formally to arraign and ask for a plea is immaterial to his rights and may be deemed to be waived." *Id*. at 365 (quotation marks and citation omitted). More recently, this Court has stated that "[a] showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment." *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013), citing MCR 6.113(A).

Based on the current record in this case, it does not appear that defendant ever received or formally waived his circuit court arraignment. Nonetheless, defendant has not shown that he was prejudiced, even presuming he did not receive a circuit court arraignment. Defendant was present at his preliminary examination. During the preliminary examination, both Curry and Detective A. J. Hite testified, and the prosecutor requested that defendant be bound over "on count one, assault with intent to murder and, count two, weapons felony firearm." The district court judge bound defendant over to circuit court and stated, "I believe there is sufficient evidence to support probable cause that the-the crime of assault with intent to murder and the felony firearm offense were committed and probable cause that the Defenfdant [sic], Mr. Lee, committed those charged offenses." The lower court file also contains the information, which includes both of defendant's charges—AWIM and felony-firearm—as well as the habitual offender, fourth offense notice. Furthermore, the lower court file contains a form explicitly indicating that defendant was rejecting the prosecution's plea offer and formally notifying the court that he wished to proceed to trial as charged. This form is signed by defendant, and it states that defendant "understand[s] that I am charged with Asslt [sic] with Intent to Murder, Felony Firearm [and] sup 4." Furthermore, defendant was convicted by a jury after a trial on the merits during which defendant was represented by counsel, and defendant never objected to the failure to actually conduct the circuit court arraignment. In light of these facts, it is clear that defendant had formal notice of the charges against him and cannot demonstrate actual prejudice even if he did not receive a circuit court arraignment proceeding. Therefore, defendant has failed to show plain error and is not entitled to reversal of his conviction. MCR 6.113(A); *Carines*, 460 Mich at 763; *Weeks*, 165 Mich at 364; *Nix*, 301 Mich App at 208.

Additionally, defendant's argument that the trial court did not have jurisdiction to conduct his trial as a result of its failure to arraign him on the information is without merit. This

Court has held that where a defendant has failed to demonstrate prejudice based on his alleged defect in the circuit court arraignment procedure, the alleged defect does not deprive the circuit court of subject matter jurisdiction because "[s]ubject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and *is not dependent on the particular facts of the case.*" *Henry*, 305 Mich App at 159 (quotation marks and citation omitted). As courts of general jurisdiction, Michigan circuit courts have subject matter jurisdiction over felony cases, and subject matter jurisdiction is not subject to waiver. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). However, personal jurisdiction involves a court's power over a particular individual, and "a party may stipulate to, waive, or implicitly consent to *personal* jurisdiction." *Id*. "[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Id*. at 268 n 49 (quotation marks and citation omitted; alteration in original). Here, defendant implicitly waived any personal jurisdiction objection based on the apparent failure to hold a circuit court arraignment and consented to the trial court's power over him; he was present during his pre-trial proceedings and trial on the merits, was represented by counsel, and failed to object to the omission of an arraignment. *Id*.; *Weeks*, 165 Mich at 364.

Moreover, defendant has not cited any legal authority to support his assertion that the facts of this case deprived the trial court of jurisdiction, and any additional argument in this respect is abandoned. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) (quotation marks and citation omitted). Therefore, defendant has also failed to demonstrate plain error on this ground. *Carines*, 460 Mich at 763.

Finally, defendant argues that he received ineffective assistance of counsel based on defense counsel's failure to object to the prosecutor's voir dire questioning that defendant alleged was improper and defense counsel's failure to object to the lack of a circuit court arraignment. Defendant has not previously raised these particular claims of ineffective assistance of counsel, and these arguments are therefore unpreserved. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *Lockett*, 295 Mich App at 186.

With respect to defendant's first ineffective assistance of counsel claim, in light of the proper nature of the prosecutor's voir dire questioning, an objection by defense counsel would have been unsuccessful, and counsel is not ineffective for mailing to make a meritless objection. *Pinkney*, 316 Mich App at 473. Furthermore, in light of the trial court's instructions cited above and the previously discussed evidence of defendant's guilt, defendant has not established that there is a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to object. *Foster*, 319 Mich App at 391. Therefore, defendant has not shown that he was denied the effective assistance of counsel based on this ground. *Strickland*, 466 US at 700.

With respect to defendant's second ineffective assistance of counsel claim, even if a circuit court arraignment was not held, defendant has failed to establish prejudice. As previously discussed, defendant was aware of the charges against him, and he was convicted after a jury trial on the merits. Based on the evidence at trial, there is not a reasonable probability that the outcome of the trial would have been different but for defense counsel's failure to object on this ground and obtain a circuit court arraignment. *Id*. Because defendant has not satisfied the prejudice prong, he cannot show that he received ineffective assistance of counsel.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra